IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| JON FULTZ, | ) |
| | ) |
| Plaintiff, | )  Civil Action No. _____ |
| | ) |
| v. | ) |
| | )  Jury Trial Demanded |
| CITY OF WINCHESTER, VIRGINIA, | ) |
| | ) |
| Defendant. | ) |

# COMPLAINT

Plaintiff, Jon Fultz ("Fultz"), by the undersigned attorneys, brings this action against Defendant City of Winchester, Virginia ("the City").

## NATURE OF ACTION

1.      Fultz brings this civil action for declaratory, injunctive, and monetary relief for the City's violation of the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4301 *et seq*. ("USERRA").

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action pursuant to 38 U.S.C. § 4323(b).

3.      This Court has venue over these claims under 38 U.S.C. § 4323(c)(2) and 28 U.S.C. § 1391(b)(2) because the City is a political subdivision of the State of Virginia located in the Western District of Virginia, and a substantial part of the acts underlying this action occurred in the Western District of Virginia.

## PARTIES

4. Fultz resides in Kokomo, Indiana.

5. The City is a political subdivision of the State of Virginia. The City is within the jurisdiction of this Court and is an employer within the meaning of 38 U.S.C. § 4303(4)(A).

## CLAIM FOR RELIEF

6. In November 2004, Fultz began employment in the City's Police Department in the non-uniformed position of Community Resource Officer. Subsequently, in October 2008, the City assigned Fultz to be the Fleet Manager for the City's Police Department.

7. As Fleet Manager, Fultz kept the Police Department's fleet of motor vehicles in good condition. The vast majority of his duties were sedentary such as maintaining vehicle records. The main physical aspect of his job was driving vehicles to the repair shop; he did not personally repair any vehicles.

8. Fultz is an active member of the U.S. Marine Corps Reserves. In July 2009, Fultz gave the City advance notice of his need to leave work for annual military training from July 10, 2009, to July 24, 2009.

9. On July 12, 2009, Fultz sustained an injury to his left knee during his military training, and as a result, was unable to complete training or immediately return to work with the City.

10. On September 3, 2009, Fultz was examined by a military nurse, who cleared him to return to work. The nurse's report recommended "No running, walking as tolerated, no squatting, no jumping, no driving stick shift through Oct. 31."

11. On September 14, 2009, Fultz returned to work with the City, and was qualified to perform his prior position as Fleet Manager.

12. At the time Fultz returned to work, the City assigned Fultz to Fleet Manager duties, but placed him in a temporary "light duty" status that subjected him to removal from his job. The City placed Fultz in that temporary status on its own and not at the request of Fultz.

13. The temporary light duty status in which Fultz was reemployed was a lesser status than Fultz's prior status as a permanent full duty Fleet Manager.

14. Despite the City's reemployment of Fultz in a "light duty" status, Fultz's assigned duties were the same as they were before he left work for military duty in July 2009.

15. From September 14, 2009 to February 19, 2010, Fultz satisfactorily performed his Fleet Manager duties and did not experience any workplace problems with his knee that would have caused concern about his job performance, safety, or health.

16. During the entire five-month period from September 14, 2009, to February 19, 2010, Fultz's knee injury did not prevent him from performing the essential duties of the Fleet Manager assignment, which were the same both prior to and after his July 2009 military training.

17. On February 19, 2010, without any prior notice to Fultz, the City's Chief of Police informed Fultz by letter "that the City will no longer be able to accommodate your request for light duty." The letter also stated: "It is clear that there is not a sufficient amount of light duty work in the department to allow you to safely perform your job. You will not be allowed to return to work until cleared for duty with no restrictions…by your attending physician."

18. The City did not inform Fultz of any factual basis for the safety concerns referenced in its February 19, 2010, letter.

19. The City placed Fultz on Family Medical Leave and he received no wages after he was removed from his temporary light duty position as Fleet Manager.

20. On March 3, 2010, Fultz went to Walter Reed Medical Center to be examined by Dr. Harvey Cohen, an orthopedist. Based on his examination of Fultz, Dr. Cohen provided Fultz with a letter fully clearing him to return to work.

21. When Fultz subsequently presented Dr. Cohen's letter to the City, it rejected the letter on the grounds that Fultz had only verbally described his assigned duties as Fleet Manager. The City then directed Fultz to be examined by a physician approved by the City.

22. On March 9, 2010, Fultz had his knee examined by the City-approved physician, Dr. Laura Gillis. The written evaluation that Dr. Gillis signed on March 12, 2010, stated that Fultz was qualified for "restricted work," with restricted bending, kneeling, squatting, and climbing. In Fultz's personal experience in the Fleet Manager assignment both prior to and after his July 2009 military training, none of those activities was actually required to perform the essential duties of that assignment.

23. On March 16, 2010, Fultz filed a USERRA complaint against the City with the U.S. Department of Labor's Veterans' Employment and Training Service ("VETS") regarding the City's removal of him from his job.

24. By letter of March 18, 2010, VETS notified the City of its reemployment obligations to Fultz under USERRA, and requested a position statement from the City. In the City's March 23, 2010, response, it stated the reason for its removal of Fultz was "due to there not being enough light work for him to safely perform in the department." The City's response also stated Fultz's injury "rendered him physically unable to perform the core duties of his job" and that the City "has made every effort to give Fultz sufficient time to recover and to find other available positions in the City for which Mr. Fultz would otherwise qualify." The City's

response also stated it had no available positions for him and asserted he had failed to provide documentation of his medical condition.

25. Despite repeated requests by VETS, the City refused to identify alternate positions for Fultz for which he was qualified or could become qualified.

26. On September 3, 2010, VETS served the City with a subpoena *duces tecum* requesting that the City identify the positions for which Fultz was qualified or could become qualified. VETS attached to its subpoena Fultz's medical information and his resume. As before, the City replied to the subpoena by providing a City-wide list of filled and unfilled jobs and refused to identify any City positions for which it believed Fultz qualified or could become qualified.

27. In August 2010, due to the financial hardships caused by the City's refusal to reinstate him since February 2010, Fultz informed the City that he had moved from Virginia to Indiana and he was no longer interested in reinstatement with the City.

28. In October 2010, the City notified Fultz that he was terminated on the ground that he had abandoned his job.

29. The Department of Labor's Solicitor's Office concluded that the USERRA complaint that Fultz filed against the City had merit and referred this matter to the U.S. Department of Justice.

30. The City violated USERRA, 38 U.S.C. §§ 4312 and 4313, by, among other things, failing to properly reemploy Fultz upon his return from military service.

31. Because of the City's actions in violation of 38 U.S.C. §§ 4312 and 4313, Fultz suffered a substantial loss of earnings and other benefits.

32. The City's violation of its obligations under USERRA was willful.

## **PRAYER FOR RELIEF**

WHEREFORE, Fultz prays that this Court grant the following relief:

A.     Declare that the City's refusal to properly reemploy Fultz was unlawful and in violation of USERRA;

B.     Order the City to comply fully with the provisions of USERRA by paying Fultz for his loss of earnings and other benefits suffered by reason of the City's failure and refusal to comply with the provisions of USERRA;

C.     Award Fultz prejudgment interest on the amount of lost earnings and other benefits found due;

D.     Award Fultz liquidated damages authorized under USERRA;

E.     Enjoin the City from taking any action in violation of USERRA; and

F.     Grant Fultz such additional relief as may be just and proper, together with costs and disbursements in this action.

Date:  March 25, 2011

Respectfully submitted,

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

/s/ Loretta King
LORETTA KING
DC Bar No. 347583
Acting Chief
Employment Litigation Section


/s/ Jodi B. Danis
/s/ Louis Whitsett
JODI B. DANIS
DC Bar No. 453493
Special Counsel
LOUIS WHITSETT
DC Bar No. 257626
Senior Trial Attorney
United States Department of Justice
Civil Rights Division
Employment Litigation Section
950 Pennsylvania Avenue, NW
Patrick Henry Building
Washington, DC  20530
Tel: (202) 305-0942; Fax: (202) 514-1005
Email: Louis.Whitsett@usdoj.gov

TIMOTHY J. HEAPHY
United States Attorney
Western District of Virginia

/s/ Sara Bugbee Winn
Sara Bugbee Winn
Assistant United States Attorney
Virginia State Bar # 35924
Office of the United States Attorney
310 1st Street, S.W., Room 906
Roanoke, Virginia  24008-1709
Tel: (540) 857-2037; Fax: (540) 857-2614
Email:  Sara.Winn@usdoj.gov